IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEMETRIUS L. SPRINGS,
      Plaintiff,

vs.                                Case No.: 3:14cv105/MCR/EMT

W.L. GIELOW, et al.,
      Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Demetrius L. Springs ("Springs"), proceeding pro se, commenced this case by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1).  The case was dismissed by order of the Chief District Judge on March 28, 2015 (ECF No. 119).  After entry of judgment (ECF No. 120), non-party Florida Department of Corrections ("FDOC") filed a Motion for Sanctions in the Form of Fees and Costs (ECF No. 125).  The Chief District Judge referred the motion to the undersigned to conduct evidentiary and such other proceedings as required, and to enter a report and recommendation on the disposition of the FDOC's motion, pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.3 (*see* ECF No. 126).  On April 22, 2015, the undersigned provided Springs an opportunity to respond to the FDOC's motion for sanctions, and set a deadline of May 22, 2015 (ECF No. 128).  The court granted Springs' several requests for extensions of time, and set the most recent deadline as July 1, 2016 (*see*

ECF Nos. 139, 141, 142, 143, 145, 146, 147, 149, 169, 172, 173, 189).  On June 30, 2016, Springs sought another extension of time (his sixth), requesting an additional seventeen (17) days, or until July 18, 2016, to file a response (ECF No. 191).  Although the court has not ruled on Springs' sixth request for more time, the additional time he requested has passed, and he still has not filed a response to the FDOC's motion for sanctions.

For the reasons discussed *infra*, the undersigned recommends that the FDOC's motion for sanctions be denied.  However, the undersigned additionally recommends that the court exercise its inherent power to impose sanctions, and impose monetary sanctions against Springs in the amount of $3,061.45.

It is well established that federal courts possess potent inherent powers that they may use to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44–45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); Eagle Hosp.  Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009) (courts have inherent authority to impose sanctions for litigation misconduct); In re Sunshine Jr. Stores, 456 F.3d 1291, 1304 (11th Cir. 2006).  This inherent power derives from the court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers, 501 U.S. at 43

(quotation marks and citation omitted).  And the "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct," *id.* at 49, "for these rules are not substitutes for the inherent power," In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995).  Whereas rule-based sanctions can reach only "certain individuals or conduct, the inherent power extends to a full range of litigation abuses" and serves to fill the gaps left by rule-based sanctions.  Chambers, 501 U.S. at 46. The power to impose sanctions, however, "must be exercised with restraint and discretion."  Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980).  "The key to unlocking a court's inherent power is a finding of bad faith."  Peer v. Lewis, 606 F.3d 1306, 1316 (11th Cir. 2010); *see also* In re Mroz, 65 F.3d at 1575 ("Invocation of a Court's inherent power requires a finding of bad faith.").  When considering sanctions under the court's inherent power, the threshold of bad faith conduct is "at least as high" as the threshold of bad faith conduct for sanctions under 28 U.S.C. § 1927.[1]  Peer, 606 F.3d at 1316 (citing Amlong & Amlong,

---

[1] Section 1927 provides that "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927. Section 1927 is directed at the unreasonable and vexatious multiplication of proceedings.  "Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation."  Peer, 606 F.3d at 1314.  Bad faith is an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim.  *Id.*

P.A. v. Denny's, Inc., 500 F.3d 1230, 1252 (11th Cir. 2007)).  Bad faith is present "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,'" or if  "a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'"  Chambers, 501 U.S. at 46 (quotations and citations omitted).

Perjury is a form of bad faith.  *See* Barash v. Kates, 585 F. Supp. 2d 1347, 1371–74 (S.D. Fla. 2006) (finding that plaintiff Barash acted in bad faith, while committing perjury, and stating that plaintiff's "entire course of conduct throughout the lawsuit evidences bad faith and an attempt to perpetrate a fraud on the court") (citation omitted).

When exercising its inherent power, the court must comply with due process in determining bad faith and affixing sanctions.  Chambers, 501 U.S. at 50.  The egregious party must be provided notice from the court, the party seeking sanctions, or both, of the legal rule on which the sanctions would be based (*e.g.*, Rule 11, 28 U.S.C. § 1927, or the court's inherent power), the reasons for the sanctions, and the form of the potential sanctions.  *See* In re Tutu Wells Contamination Litig., 120 F.3d 368, 379 (3d Cir. 1997) (citation omitted); *see also* In re Mroz, 65 F.3d at 1575.

Additionally, if sanctions under the court's inherent power are requested by a party, the request must be timely filed.  A motion for sanctions under the court's inherent power is timely if it is filed before entry of the court's final order.  *See* Peer, 606 F.3d at 1315 n.10 (citing 2 James Wm. Moore et al., Moore's Federal Practice § 11.41[6] (3d ed. 2010); Prosser v. Prosser, 186 F.3d 403, 405–06 (3d Cir. 1999) (stating that where sanctionable conduct occurs and is discovered before final judgment, a motion for sanctions pursuant to the court's inherent power must be filed before entry of the court's final order)); *see also, e.g.,* Roy v. Bd. of Cnty. Comm'rs, No. 3:06cv95/MCR/EMT, 2011 WL 4904410, at *10 (N.D. Fla. Sept. 27, 2011) (unpublished) (denying motion for sanctions, sought pursuant to the court's inherent power, as untimely where sanctionable conduct occurred and was discovered before entry of final judgment) (citing Peer), *Report and Recommendation Adopted by* 2011 WL 4904409 (N.D. Fla. Oct. 14, 2011) (unpublished); In re Benevento, No. 10-25535-EPK, 2013 WL 1292671, at *9 (S.D. Fla. Mar. 27, 2013) (unpublished) (same); USA Video Tech. Corp. v. Movielink, LLC, No. Civ. A-03-368-KAJ, 2005 WL 3418407, at *2 n.4 (D. Del. Dec. 13, 2005) (unpublished) (same).

In the instant case, the FDOC's motion for sanctions is untimely.  The evidentiary hearing in the instant case concluded on June 24, 2014 (*see* ECF No. 68).

On July 28, 2014, the undersigned issued a Report and Recommendation detailing Springs' sanctionable conduct and recommending that the case be dismissed, and the matter referred to the United States Attorney's Office for consideration as to whether to pursue perjury charges against Springs (ECF No. 82).  Thus, the sanctionable conduct had occurred and was discovered at that time.  The district judge entered a final order adopting the Report and Recommendation in its entirety on March 28, 2015 (ECF No. 119).  The clerk entered final judgment on March 31, 2015 (ECF No. 120).  The FDOC filed the instant motion for sanctions on April 15, 2015, fourteen days after final judgment was entered, and nine months after discovery of the sanctionable conduct (ECF No. 125).  The FDOC identifies no other earlier filed request for sanctions pursuant to the court's inherent power in the record, nor is the court aware of any such request.  The FDOC's instant motion for sanctions pursuant to the court's inherent power is, therefore, untimely.  Accordingly, the undersigned recommends that the motion be denied.

However, the court itself may invoke its inherent power to sanction upon a finding of bad faith.  *See* Chambers, 510 U.S. at 350; Peer, 606 F.3d at 1314.  Thus even though the FDOC's motion for sanctions is procedurally time-barred and therefore should be denied, sanctions are substantively appropriate.  *See, e.g.*, Peer v.

Lewis, 571 F. App'x 840, 844–45(11th Cir. 2014), *cert. denied* Lewis v. Peer, 135 S.

Ct. 1176, 191 L. Ed. 2d 133 (2015) (Mem) (unpublished but recognized as persuasive

authority) (district court acted within its discretion in imposing "Rule 11–type"

sanctions under its inherent power against attorney; there was overwhelming evidence

that attorney acted in bad faith by knowingly pursuing frivolous claim, and thus Rule

11 sanctions were substantively appropriate, although untimely, and district court used

inherent powers to fill in gap left by Rule 11's timeliness requirement).

Springs has been provided notice, pursuant to the FDOC's motion for sanctions

under the court's inherent power, of the legal rule on which the sanctions would be

based, the reasons for the sanctions, and the form of the potential sanctions.  He thus

has been afforded due process in determining bad faith and affixing sanctions.  As this

court found in its final order, Springs repeatedly lied and perjured himself both in his

written submissions and during his live testimony before the court at the evidentiary

hearing on June 23 and 24 of 2015.  He perpetrated a fraud on the court by making

repeated accusations against Defendants which Plaintiff knew were untrue.  For

example, he accused Defendants of denying him medical treatment, when his own

medical records showed that he either received treatment or refused it.  He also

accused  Defendants  of  using  unnecessary  force  against  him,  including  the

employment of a Rapid Response Riot Team or Cell Extraction Team, and shooting him with a "beanbag" munition.   The evidence at the evidentiary hearing demonstrated that such measures were never employed.

As a result of Springs' filing and pursuing his knowingly false allegations, the FDOC spent significant time and funds investigating and responding to Springs' assertions that he was under imminent danger of serious physical harm when he initiated this case.  Even after it was clear that there was no evidence to support Springs' allegations, he did not yield and instead compounded the amount of resources expended by the FDOC to evaluate and respond to his allegations. Therefore, an award to the FDOC of their reasonable attorney fees and costs is warranted under the court's inherent power, not only to compensate the FDOC for the costs and fees unnecessarily expended by the FDOC in investigating and responding to Springs' allegations, but also to deter Springs from filing similar frivolous lawsuits in the future.[2]

The next issue is the amount of sanctions that should be imposed against Springs.  The FDOC submitted evidence that Springs' repeated lying and perjuring himself directly caused the FDOC to incur expenses in the amount of at least

_____

[2] Springs' status as a "three striker" under 28 U.S.C. § 1915(g) has not deterred him from filing frivolous lawsuits.

$11,325.25 (*see* ECF No. 125 at 4–5, ¶¶ 7–13, Exs. 2, 3, 4, 5).  This amount includes $2,621.35 for the cost of transcripts of the depositions of ten inmates whom Springs identified as witnesses for the evidentiary hearing, and $440.10 for the cost of a transcript of the evidentiary hearing, which was required to determine the portions of the transcripts that required redaction.  The amount also includes fees for FDOC's counsel, Attorney David W. Grimes and Attorney Marcus O. Graper, for time spent traveling to and from, attending, and preparing for the ten depositions, in addition to time that Attorneys Grimes and Graper, and Ms. Chrystal Harwood (a paralegal with the FDOC) spent participating in the evidentiary hearing.

Courts determine the amount of attorney fees to be charged by calculating the "lodestar," which is the number of hours reasonably spent working on the case multiplied by a reasonable hourly rate.  *See* <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1353 (11th Cir. 2000).  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  <u>Norman v. Housing Auth. of City of Montgomery</u>, 836 F.2d 1292, 1299 (11th Cir. 1988).  The court itself is "an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or

without the aid of witnesses as to value." *Id.* at 1303. The relevant market for a reasonable hourly rate is located in the place where the case is filed. *See* <u>Am. Civil Liberties Union of Ga. v. Barnes</u>, 168 F.3d 423, 437 (11th Cir. 1999).

Attorney Marcus O. Graper submitted a declaration stating that he has been employed as an Assistant Attorney General with the Florida Office of the Attorney General–Corrections Litigation Bureau since January of 2008 (*see* ECF No. 125 at 4, ¶ 10, and Ex. 4, Declaration of Marcus O. Graper ¶ 1). He thus had been practicing in this area for six years at the time he participated in the proceedings that culminated in the evidentiary hearing in June of 2014 (*id.*). Attorney Graper states in his declaration that the contracted billing rates for the Florida Attorney General's Office during the relevant time period was $78.00 per hour for an Assistant Attorney General (Graper Decl. ¶ 2). The court concludes that Attorney Graper's rate as billed, $78.00 per hour, is well within the range of a reasonable hourly rate in the North Florida legal community for the work performed, in light of Graper's years of experience.

Attorney Graper states that Attorney Grimes was an entry level Attorney-Assistant Attorney General at the time Grimes participated in these proceedings (*see* ECF No. 125 at 4, ¶ 10). Graper states in his declaration that the contracted billing rates for the Florida Attorney General's Office during the relevant time period was

$66.00 per hour for an Attorney-Assistant Attorney General (Graper Decl. ¶ 2). The court concludes that Attorney Grimes' rate as billed, $66.00 per hour, is well within the range of a reasonable hourly rate in the North Florida legal community for the work performed, in light of Grimes' limited experience.

Finally, Attorney Graper states that Chrystal Harwood was a paralegal at the time she participated in the evidentiary hearing (*see* ECF No. 125 at 4, ¶ 10). Graper states in his declaration that the contracted billing rates for the Florida Attorney General's Office during the relevant time period was $30.00 per hour for a paralegal (Graper Decl. ¶ 2). Work done by a paralegal is recoverable "only to the extent that the paralegal performs work traditionally done by an attorney." Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988)). Here, the work performed by Paralegal Harwood was more in the nature of secretarial or clerical (e.g., compiling exhibits and conferring briefly with witnesses for the evidentiary hearing, attending the hearing, and traveling to and from the hearing); however, the rate of $30.00 per hour is reasonable for work of this nature.

Additionally, upon review of the FDOC's submissions as to the hours expended by Attorney Graper, Attorney Grimes, and Paralegal Harwood (*see* ECF No. 125, Ex. 3), the court has determined that the time claimed/hours requested by the FDOC is

reasonable.  Therefore, the FDOC is entitled to be reimbursed for 48.6 hours for Attorney Graper's time, 59.5 hours for Attorney Grimes' time, and 18.2 hours for paralegal Harwood's time (*see* ECF No. 125 at 4–5, ¶¶ 7–11, Exs. 3, 4).

Notwithstanding the above determinations regarding reasonable hourly rates and reasonable hours expended, the court is also required to consider Springs' financial circumstances and ability to pay.  *See* Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1337 (11th Cir. 2002) (per curiam).  According to information available on the FDOC's public website, Springs has been incarcerated since 2001, and is not scheduled for release until 2020.  *See* http://www.dc.state.fl.us. Further, the inmate account statements he has submitted in this litigation demonstrate that he has not received any deposits in his account from August of 2013 to February of 2014, or from October of 2014 to April of 2015 (ECF Nos. 2, 135).

Courts may assess costs and monetary sanctions against IFP litigants.  *See* Moon v. Newsome, 863 F.2d 835, 838 (11th Cir. 1989) (prisoner plaintiff's in forma pauperis status alone does not make obvious his inability to pay any costs whatsoever); Harris v. Forsyth, 742 F.2d 1277 (11th Cir. 1984) ("a court has discretion to award costs against indigents 'as in other cases'"); *see also* Cotner v.

Hopkins, 795 F.2d 900, 902 (10th Cir. 1986) (imposition of $1,000 fine on inmate

litigant not presumptively objectionable).  However, as the Eleventh Circuit explained,

> [s]anction orders must not involve amounts that are so large that they
> seem to fly in the face of common sense, given the financial
> circumstances of the party being sanctioned . . . .  And, sanctions must
> never be hollow gestures; their bite must be real.  For the bite to be real,
> it has to be a sum that the person might actually pay.

*Id.*

The undersigned concludes that while Springs' conduct of filing a baseless

lawsuit should not go without ramifications, an award of total expenses would be

unjust in this situation, especially considering that Springs cannot pay such an award.

Given these circumstances, it appears that a reduction from $11,325.25 to $3,061.45

($2,621.35 for the cost of transcripts of the depositions of ten inmates whom Springs

identified as witnesses for the evidentiary hearing, and $440.10 for the cost of a

transcript of the evidentiary hearing) is appropriate.  Thus, notwithstanding that the

FDOC is entitled to sanctions, the court will recommend imposition of a sanction in

the amount of only $3,061.45, pursuant to its inherent power to sanction.  *See, e.g.*,

Davis v. Robinson, No. 4:13cv504/MW/CAS, 2015 WL 1739191 (N.D. Fla. Apr. 16,

2015) (imposing sanction in the amount of $45.00 upon IFP plaintiff for his refusal

to cooperate in his first deposition, which necessitated a second deposition; even

though defendants incurred total expenses of $773.86, which included reimbursement for attorney time and mileage and a court reporter's appearance fee of $45.00, reduced sanction was appropriate since plaintiff had no funds in his inmate account); Gensinger v. Chowdhury, No. 4:12cv243/MCR/CAS, Order (N.D. Fla. Apr. 19, 2013) (imposing sanction in the amount of $44.10 upon IFP plaintiff, which was the amount of the court reporter's appearance fee, for plaintiff's failure to appear for first deposition), Order (N.D. Fla. Aug. 9, 2013) (imposing sanction in the amount of $66.60 upon plaintiff, which was the amount of the court reporter's appearance fee and fee for preparing certificate of no appearance, for plaintiff's failure to appear for second deposition).

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the FDOC's Motion for Sanctions in the Form of Fees and Costs (ECF No. 125) be **DENIED** as untimely.

2.     That the court impose sanctions upon Plaintiff Springs, pursuant to its inherent power, in the amount of $3,061.45, because his entire course of conduct from the commencement of this lawsuit through the evidentiary hearing in this matter on June 23 and 24 of 2014, evidences bad faith and an attempt to perpetrate a fraud on

the court; and that said sanctions be paid to the FDOC for its fees and costs expended

in preparing for and participating in the evidentiary hearing.

      3.      That all pending motions be **DENIED as moot**.

At Pensacola, Florida this 26<u>th</u> day of July 2016.


        /s/ *Elizabeth M. Timothy*             
        **ELIZABETH M. TIMOTHY**
        **CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

      **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**